UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **5:26-cv-05074-WLH-DTB** | Date | September 24, 2026 |
| Title | ***Luis Fernando Juarez Perez v. Warden, Adelanto ICE Processing Center et al*** | | |

Present: The Honorable WESLEY L. HSU, United States District Judge

| | |
|---|---|
| Claudia Garcia-Marquez | None |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings: (IN CHAMBERS) ORDER RE PETITION FOR WRIT OF HABEAS CORPUS [1]**

The Court is in receipt of Petitioner's Petition for Writ of Habeas Corpus. (Petition, Dkt. No. 1). Petitioner primarily seeks a writ of habeas corpus requiring immediate release, an injunction against re-detaining Petitioner without providing notice and a pre-detention hearing, and an injunction against removing Petitioner pending the administrative finality of his removal proceedings in Immigration Court. (Pet. at 6).

On September 11, 2026, Petitioner filed a Notice of Respondents' Failure to Appear or Respond. (Dkt. No. 6). On September 14, 2026, the Court issued an Order to Show Cause Regarding [Respondents'] Violation of General Order 26-05, which Respondents failed to respond to. (Dkt. No. 7). On September 21, 2026, the Petitioner filed a Notice of Respondents' Failure to Respond to Order to Show Cause and Request for Immediate Ruling on Unopposed Petition. (Dkt. No. 8). Because the Respondents do not oppose this Petition, its merits are conceded. *See* C.D. Cal. L.R. 7-12 ("The failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion."); *see also* C.D. Cal. L.R. 7-9 (setting

forth the requirement of opposition brief or statement of non-opposition). The Court finds that the Petition also succeeds on its merits, for the reasons set forth below.

Accordingly, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus, **ORDERS** Petitioner to be released immediately, and **ENJOINS** Respondents from re-detaining, or adding any other restrictions to the liberty of, Petitioner without first providing notice and a pre-detention hearing. The Court also sets a briefing schedule regarding the remaining request of Petitioner that this Court stay his removal from the United States.

## I. BACKGROUND

Petitioner Luis Juarez-Perez is a foreign national of Mexico who entered the United States on or around May 2024. (Pet. at 1). Petitioner has no criminal history, has two young children and has resided at a single address in Oxnard, California, since entering the United States. (*Id*. at 12-14). He has two sons with his partner, the younger of whom is an infant and a citizen of the United States. (*Id.* at 11).

On July 24, 2025, Petitioner voluntarily presented himself to an Immigration and Customs Enforcement (ICE) office after his partner told him to check-in with the office. (*Id.*). Petitioner had no prior contact with immigration officials, answered officers' questions, provided his home address and was released on his own recognizance without any requested follow-up or Notice to Appear for removal proceedings. (*Id.*). For eleven months after the check-in, Petitioner remained at his home address and worked as an agricultural field worker, as he had prior to his check-in. (*Id.*).

On June 25, 2026, Petitioner was arrested and detained without notice while an Immigration and Customs Enforcement Team was allegedly attempting to apprehend Douglas Enemias Perez-Perez ("Perez-Perez"), who had a criminal record. (*Id*. at 12). Petitioner submits a declaration, (Pet. Ex. I ("Petitioner's Declaration")), under the

penalty of perjury that states that he was in the area, "near the Van Nuys Immigration Court" to "give[] someone a ride who had a court hearing," and that he had been "driving and [] was pulled over." (Pet.'s Decl. at 2). Petitioner submits his U.S. Department of Homeland Security (DHS) Form I-213 "Record of Deportable/Inadmissable Alien" ("DHS Detention Report") bearing the name and signature of a deportation officer as Exhibit C, which contains the following "Encounter Data" entry:

> On June 25, 2026, Los Angeles Enforcement and Removal Operations (ERO), Van Nuys Fugitive Operations Team, conducted a targeted field operation to locate criminal alien, PEREZ-Perez, Douglas Enemias. . .
>
> At approximately 1140 hours, ICE Officers observed a male subject resembling PEREZ-Perez's physical description near the target address. ICE Officers wearing ICE approved body armor physical description near the target address. ICE Officers wearing ICE approved body armor with ICE and Police clearly visible, approached the male subject to conduct a field interview. During the field interview, the subject stated his name was JUAREZ-PEREZ, Luis Fernando. ICE Officers asked JUAREZ-PEREZ if he had any form of identification card in his possession, to which JUAREZ-PEREZ replied "No." ICE Officers asked JUAREZ-PEREZ of what country he was a citizen of, to which JUAREZ-PEREZ replied "Mexico." Furthermore, JUAREZ-PEREZ admitted to being a citizen and national of Mexico without the proper documentation that would allow him to be or remain in the United States legally. JUAREZ-PEREZ informed ICE Officers that he had entered the United States illegally. At approximately 1145 hours, ICE Officers conducted a warrantless arrest. Under 8 U.S.C. 1357 (a) (2) / INA 287 (a) (2). Under JUAREZ-PEREZ's own admission, there was Probable Cause for 1357 (a) (2) / INA 287 (a) (2). Under JUAREZ-PEREZ's own admission, there was Probable Cause for arrest since JUAREZ-PEREZ admitted he entered the United States without inspection or arrest in violation of 212 (a) (6) (A) (i) of the Immigration and Nationality Act.

(DHS Deportation Report at 2). The DHS Deportation Report further identifies his criminal history as "NONE" with "Negative Wants/Warrants." (*Id.* at 3). It also notes that on July 24, 2025, Petitioner "voluntarily presented himself at the ICE ERO Camarillo office," and that "ICE ERO released JUAREZ-PEREZ on Own Recognizance (OREC), but failed to serve him with a form I-862 Notice to Appear." (*Id.* at 2). The report does not state that Petitioner violated his release conditions, nor has Petitioner ever been told that he did so. (Pet. at 11). The report does not state that Petitioner resisted questioning or arrest in any way, and Petitioner claims he did not do so either. (*Id*. at 14). On the same day and following his arrest, Petitioner was served a Notice to Appear for removal proceedings, which he attaches to his Petition as Exhibit B ("Notice to Appear"). (DHS Detention Report at 3; Notice to Appear). The DHS Detention Report determined that Petitioner "will remain in custody pending his immigration proceedings." (DHS Detention Report at 3).

The DHS Detention Report also contains many descriptions of Petitioner that are allegedly substantially and verifiably incorrect. It records a date of birth that is not his own, states that he has no children, reports that he has no fear of returning to his country of origin and describes him as having a prosthetic right arm. (Pet. at 13-14). Petitioner attaches to his application his infant son's certified U.S. Birth Certificate containing his correct birthdate, as well as his declaration under the penalty of perjury confirming his date of birth, the fact that he has two children, that he fears returning to his country of origin and that he has no prosthetic arms. (Pet. Ex. G; *see generally* Petitioner's Declaration).

At his removal hearing, Petitioner conceded removability but filed an application for asylum alleging that since his entry into the United States, "the cartel that has overtaken his home community murdered two of his relatives in their home; that his

Zapotec family is particularly exposed to cartel violence; and that local police, who are connected to the cartel, did not investigate." (Pet. at 17; *see* Pet. Ex. D ("Asylum Application") at 5). DHS quickly moved to pretermit his Asylum Application, to which Petitioner filed an opposition and requested a hearing and evidentiary deadlines to be set. (Pet. at 17). Shortly after Petitioner filed his opposition and without any hearing, the Immigration Judge denied Petitioners Asylum Application, vacated his upcoming asylum hearing and ordered Petitioner to be removed. (*Id.* at 18). Petitioner has reserved and intends to appeal the denial of his Asylum Application. (*Id.*) In the interim, Petitioner has been in custody for nearly three months at Adelanto ICE Processing Center. (Pet.'s Decl. at 2). Since his detention, Petitioner has not received an individualized custody determination or bond hearing that considers his legal parole status and he has not been served a Form I-286, the "ordinary mechanism by which a noncitizen requests review of a custody determination." (Pet. at 37).

## II. DISCUSSION

### a. Legal Standards

By statute, federal courts "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Granting a petitioner's petition "explicitly requires a nexus between the petitioner's claim and the unlawful nature of the custody." *Bailey v. Hill*, 599 F.3d 976, 980 (9th Cir. 2010).

The Fourth Amendment requires that officers on roving patrol stop vehicles "only if they are aware of specific articulable facts together with rational inferences from these facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." *United States v. Brignoni-Ponce,* 422 U.S. 873, 884 (1975); *see*

*also United States v. Medina-Gasca,* 739 F.2d 1451, 1453 (9th Cir.1984); *United States v. Ogilvie,* 527 F.2d 330, 331 (9th Cir.1975). In determining whether a particular stop by the Immigration Officers has met the reasonable suspicion test, it is crucial that "the articulable facts forming the basis of a reasonable suspicion [be] measured against an objective reasonable man standard, not by the subjective impressions of a particular officer." *Nicacio v. INS,* 797 F.2d 700, 703 (9th Cir.1986) (cleaned up). As the *Nicacio* court explained, all "permissible deductions . . . or rational inferences . . . must . . . flow from objective facts and be capable of rational explanation." *Id.* at 705 (cleaned up). In *Brignoni-Ponce,* the Supreme Court held that "Hispanic appearance alone is insufficient to justify a stop." 422 U.S. at 886-87. Furthermore, in *Nicacio,* the Ninth Circuit held that "Hispanic-looking appearance and presence in an area where illegal aliens frequently travel are not enough to justify a stop to interrogate the occupants of a vehicle." 797 F.2d at 703.

"The Fifth Amendment's Due Process Clause forbids the Government to depriv[e]" any "person. . . of . . . liberty. . . without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (cleaned up). To determine what due process under the Fifth Amendment requires, courts consider: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). "It is well established

that the Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025).

Immigration officials have limited authority to conduct a warrantless arrest of a noncitizen.[1] "The federal statutory structure instructs when it is appropriate to arrest a [noncitizen] during the removal process." *Arizona v. United States*, 567 U.S. 387, 407 (2012). This authority is "more limited" where "no federal warrant has been issued." *Id.* at 408. An immigration agent may conduct a warrantless arrest of "any [noncitizen] in the United States, if he has reason to believe that the [noncitizen] (1) is in the United States in violation of any such law or regulation [regulating the admission, exclusion, expulsion, or removal of noncitizens] and (2) is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). Section 1357's corresponding regulation confirms this standard, requiring a warrant for arrest of a noncitizen "except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii).

To obtain a permanent injunction, the Court must find that the following factors are satisfied: (1) that the plaintiff has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) that the remedy in equity is warranted upon consideration of the balance of hardships between the plaintiff and defendant; and (4) that the permanent injunction being sought would not hurt public interest. *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 311-313

[1] Where it does not change the meaning, this Court uses the term "noncitizen" in place of alien. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' Alien, Webster's Third New International Dictionary 53 (2002), while the word noncitizen, which is synonymous, *see* Alien and Noncitizen, American Heritage Dictionary of English Language 44, 1198 (5th ed. 2011), avoids such connotations. Thus, noncitizen seems the better choice.").

(1982). The decision to grant or deny permanent injunctive relief is an act of equitable discretion by a U.S. district court. *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006).

**b. Petitioner's Vehicle Stop and Warrantless Arrest Violated the Fourth Amendment and Federal Law**

Respondents' stop, arrest and detention of Petitioner are in violation of the Constitution and the federal laws governing arrests of noncitizens during the removal process. Respondents' stop of Petitioner's vehicle violated the Fourth Amendment because immigration officers lacked reasonable suspicion to stop his vehicle. Petitioner testifies as to his belief that the only resemblance in physical appearance that he had with ICE's target subject was the fact that both he and the target subject were Hispanic and that his race was the sole reason for the stop. (Pet. at 23; Pet.'s Decl. at 3). Respondents have submitted no *evidence* in this case to counter Petitioner's testimony, such as testimony under oath from any witness with personal knowledge that Petitioner in fact resembled the suspect, or any evidence of what that subject looked like, such as a photograph.

While it is true that the DHS Detention Report articulates that immigration officers stopped Petitioner Juarez-Perez's vehicle because he was a "male subject resembling PEREZ-Perez's physical description near the target address," that same report describes Petitioner as having a prosthetic arm. Given the lack of a witness to attest to the truth to the matters contained in the DHS Detention Report and its patent falsity as to Petitioner's appearance, this Court cannot rely on it here.

Under the Fourth Amendment's reasonable suspicion test, the articulatable *facts* forming the basis of a reasonable suspicion must be capable of rational explanation, which is measured using the objective reasonable person standard. *Gonzalez-Rivera v.*

*I.N.S.*, 22 F.3d 1441, 1445 (9th Cir. 1994). Based on the record before the Court, Respondents lacked reasonable suspicion of Petitioner, and therefore lacked the probable cause to stop his vehicle prior to his arrest, in violation of the Fourth Amendment.

Respondents also violated the federal laws governing arrests of noncitizens for removal. To conduct a warrantless arrest, Section 1357 and its corresponding regulation require a determination of escape risk that is "particularized with respect to that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). Again, due to Respondents' failure to appear to oppose this Petition, there is no evidence before the Court that any such determination of escape risk occurred. The DHS Detention Report contains no indication that officers conducted any escape risk assessment but notes that Petitioner had previously self-reported to ICE where had been released on his own recognizance without the initiation of any removal proceedings. (DHS Detention Report at 2). At the scene of the arrest, Petitioner did not flee and cooperated during his questioning. The officers did not appear to know the identity of the Petitioner prior to the encounter, did not find any criminal history for Petitioner and did not ask any questions regarding the Petitioner's likelihood of escape. Mere presence of a noncitizen within the United States in violation of federal immigration law is not sufficient to conclude that a person is likely to escape before a warrant for arrest can be obtained. *See* 8 U.S.C. § 1357(a)(5)(A) (providing that if an immigration officer may conduct a warrantless arrest when they have reasonable grounds to believe that the person is committing a felony *and* "if there is a likelihood of the person escaping before a warrant can be obtained for his arrest") (emphasis added).[2]

[2] It is notable that the DHS Detention Report incorrectly states the law. (*See* DHS Detention Report at 2 ("[u]nder [his] own admission, there was Probable Cause of [warrantless] arrest since JUAREZ-PEREZ admitted he entered the United States [illegally]")).

Finally, Respondent violated Petitioner's Procedural Due Process Clause rights under the Fifth Amendment because he was not provided notice and opportunity to be heard prior to his detention, which occurred after ICE already released him on his own recognizance. Under most circumstances, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). This principle applies to noncitizens within the territorial United States like Petitioner. *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process"); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals. . . whose liberty the government wields significant discretion retain a protected interest in their liberty").
Thus, while "in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the. . . conditions [of release].'" *Id*. (alterations in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

Because the stated statutory purposes of civil immigration detention are to ensure appearance at future immigration proceedings and/or to prevent danger to the community, *Zadvydas*, 533 U.S. at 693-94, and because ICE is "not authorized to release [petitioners] if [they] [are] a danger to the community or a flight risk, the Court must infer from [a petitioner's] release that ICE determined [the petitioner] was neither." *Pinchi*, 792 F. Supp. 3d at 1034; *see Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (noting that immigration officials can only release non-citizens if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or

persons, and that the [noncitizen] is likely to appear for any future proceeding") (citing 8 C.F.R. § 236.1(c)(8)). Accordingly, courts across this Circuit, both in and out of this District, agree that a noncitizen acquires a Fifth Amendment liberty interest upon release by an immigration official. *See, e.g., id., Perez Bueno v. Janecka*, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *4 (C.D. Cal. Feb. 5, 2026) ("The Court finds that DHS's initial decision to release Petitioner. . . reflects a determination that Petitioner was neither a flight risk nor a danger to the community at that time"); *Noori v. LaRose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *13 (S.D. Cal. Oct. 1, 2025) ("In general '[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.'") (quoting *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)). Thus, the Court finds that Petitioner has a valid liberty interest in remaining out of custody, which he acquired in July 2025 when ICE released Petitioner on his own recognizance and without any Notice to Appear.

Having established that Petitioner has a valid liberty interest under prong one of the *Mathews v. Eldridge* factors, the Court applies the second and third prongs to determine whether Respondents provided Petitioner sufficient procedures to protect his liberty interest. The Court finds they have not. Petitioner has not been told he violated any terms of his July 2025 release, was not provided any pre-detention notice or opportunity to be heard and, even while detained, has not been provided an individualized custody or bond hearing. This demonstrates that the risk of erroneous deprivation of Petitioner's liberty interest is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker. Thus, the second *Mathews* prong weighs in favor of granting Petitioner the relief of being provided a pre-detention hearing.

Finally, no countervailing government interest has been identified that could outweigh the need to protect Petitioner's liberty interest with a pre-deprivation hearing. The Government "cannot reasonably assert that it is harmed in any legally cognizable sense" by being enjoined to comply with the law. *Zepeda v. Immigr. & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Any general interest in immigration enforcement does not outweigh the injuries suffered by Petitioner. To that end, "[a]ny additional administrative costs to the government are far outweighed by the considerable harm to plaintiffs' [] rights in the absence of the injunction." *Hernandez*, 872 F.3d at 996. "Faced with such a conflict between [the minimal cost to implement additional safeguards] and preventable human suffering, . . . the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). Therefore, the final *Mathews* factor also weighs in favor of Petitioner. As each of the *Mathews* factors is met, the Court finds that Petitioner's detention occurred in violation of his Fifth Amendment Procedural Due Process rights.

Petitioner has been in immigration detention since officers stopped his vehicle and arrested him without a warrant in June 2026. Respondents' stop of Petitioner's vehicle violated of his Fourth Amendment rights, Respondents' warrantless arrest of Petitioner following the vehicle stop violated 8 U.S.C. § 1357(a)(2) and its corresponding regulation, and Respondents' detention has violated his Fifth Amendment Procedural Due Process rights. Accordingly, the Court finds that Petitioner has thoroughly evinced the "nexus between the petitioner's claim and the unlawful nature of the custody." *Bailey*, 599 F.3d at 980. As many other courts have held in recent months, the appropriate remedy for such violations is to place Petitioner in the position he was in prior to the violation—that is, he should be released from custody under the same conditions that governed his prior release. *See, e.g., Rosales v. Mullin,* No. 2:26-CV-

03657-MAA, 2026 WL 1104776, at *3 (C.D. Cal. Apr. 17, 2026); *Perez Bueno*, 2026 WL 309934, at *4; *Garcia-Henriquez v. LaRose*, No. 3:26-CV-00249-RBM-BJW, 2026 WL 323328, at *3 (S.D. Cal. Feb. 6, 2026); *Larios v. Albarran*, No. 25-cv-08799-AMO, 2025 WL 2939223, at *3 (N.D. Cal. Oct. 16, 2025); *Solano v. Robbins*, No. 1:25-CV-01823-EPG-HC, 2025 WL 3718831, at *10 (E.D. Cal. Dec. 23, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

As such, the Court **GRANTS** the Petition for Writ of Habeas Corpus. Petitioner is **ORDERED** to be immediately released.

**c. Petitioner's Request for Injunction Against Redetention**

Petitioner has fulfilled all *Weinberger* factors to obtain an injunction against redetention without notice and opportunity to be heard. First, the fact that his detention is unconstitutional "unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Second, "unlawful detention certainly constitutes extreme or very serious damage, and that damage is not compensable in damages." *Hernandez*, 872 F.3d at 999 (internal quotation marks omitted). As to the third and fourth *Weinberger* factors, the Ninth Circuit has found that the consideration of the balance of equities and the public interest in an injunction merge "[w]hen the government is a party[.]" *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, the public has a strong interest in upholding procedural protections against unlawful detention." *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *6 (E.D. Cal. July 16, 2025) (internal quotation marks omitted). Furthermore, "[a]s the DHS has previously recognized, '[e]xecuting civil immigration enforcement actions in or near a courthouse may chill individuals' access to courthouses, and, as a result, impair the fair

administration of justice.'" *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *14 (N.D. Cal. Sept. 12, 2025) (citing DHS's April 27, 2021 Civil Immigration Enforcement Actions in or Near Courthouses memorandum). Given that the Government faces no real injury from abiding by the Constitution and its own laws, the balance of equities and the public interest tips sharply in Petitioner's favor.

#### d. Petitioner's Request for Injunction Against Removal

Having disposed of Petitioner's request for release and a prohibition against re-detention, there remains Petitioner's request for a prohibition on his removal from the United States. It is not clear to the Court that it has the authority to grant such a request and notes that the Supreme Court has held that "[a]lthough removal is a serious burden for many [noncitizens], it is not categorically irreparable." *Nken v. Holder*, 556 U.S. 418, 435 (2009) ("removal alone cannot constitute the requisite irreparable injury"). Nevertheless, Petitioner may file a motion for judgment on this remaining claim for a stay of removal no later than 30 days from today; if Petitioner determines this claim is not viable, he shall file a notice of abandonment of this claim so that the Court may enter final judgment in the case. After the 30 days, the Court will then take the habeas petition under submission and render a final judgment thereafter.

## III. CONCLUSION

Accordingly, it is hereby **ORDERED, ADJUDGED AND DECREED** that the Petition is **GRANTED**.[3] The Court **ORDERS** the following.

[3] Because final judgment will be entered upon the Court's ruling on Petitioner's request to enjoin his removal (or Petitioner's abandonment of his request), the Court rescinds the referral to Magistrate Judge Bristow.

1. Respondents are **ORDERED** to immediately release Petitioner from custody within 24 hours of entry and **MUST REINSTATE** the same conditions that were in place prior to his detention on June 25, 2026.

2. Respondents **MUST RETURN** to Petitioner any personal property confiscated from him at the time of his detention.

3. Respondents **MUST FILE** a Notice of Compliance, notifying the Court that Petitioner has been released, no later than three calendar days from the date of this Order.

4. Respondents are **ENJOINED** from re-detaining Petitioner, or imposing any other restriction on his liberty including but not limited to electronic monitoring, without first providing notice and opportunity to be heard before a neutral arbiter, in which the government bears the burden of proving, by clear and convincing evidence, that he is a flight risk or danger to the community.

5. Upon receipt of Respondents' Notice of Compliance as well as Petitioner's brief or retraction for his request to enjoin his removal, the Court will rule on the injunction request if needed and enter judgment accordingly.

6. Any application for fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, shall be filed in accordance with that statute.

**IT IS SO ORDERED.**